wages to which the promise applied. It was the province of the jury to say to what portion, or whether to the whole of the wages, the promise applied. The promise was absolute: "I will put up your wages for you." The jury having found that the promise applied to the whole account, the court is satisfied that the verdict is correct. Motion for a new trial overruled.

## Case No. 10,917.

### PENDALL v. RENCH et al.

[4 McLean, 259.] [1]

Circuit Court, D. Ohio. July Term, 1847.

PROOF OF AGENCY—TRANSFER OF SPECIAL TRUST—RESPONSIBILITY OF CARRIERS.

1. An individual may prove his own agency.

2. But where a special trust or confidence is placed in an individual, he can not transfer that to another.

3. Bills of lading, which required the signature of a principal agent, can not be held good if signed by a person designated by the principal.

4. Common carriers are responsible for property confided to them, except it be taken or destroyed by a public enemy.

5. Any damage done to goods in the course of transportation, must be made good by the transportation company.

[This was an action at law by J. Morrison Pendall, who sues for himself and for the use of Alliance Mutual Insurance Company, against John Rench and others, who constituted a transportation company, to recover damages for loss of and damage to certain goods delivered to defendants as common carriers.]

Mr. King, for plaintiffs.

Mr. Fox, for defendants.

OPINION OF THE COURT. This action is brought against the transportation company from Cincinnati to New York, by the way of the Miami canal and the lake, etc.

Jury sworn.

N. P. Iglehart's deposition was read to the jury. He acted at Cincinnati as the agent of the company, signed the bill of lading marked A, which he was authorized to do. He knows of no order to change the consignee. The other bills were signed by Shaw, the confidential clerk of the witness, and who was authorized by witness to do so. The parties agreed as to the name of the transportation company. E. T. Tucker, in his deposition, states that five hundred pieces of cotton bagging were delivered at Cincinnati, to be forwarded to New York. The goods were received at New York in a damaged state, and this action is brought for the damages.

It was objected that Iglehart was an incompetent witness, and that from the form

of the contract, it must be held to be his, and not the contract of the transportation company. THE COURT held that Iglehart was a competent witness, and that he could prove his agency. That as to the contract or bill of lading signed by him, THE COURT would regard more the substance than the form of it. But THE COURT said, as regards the bills of lading, not signed by Iglehart, they could not be received as bills of lading. That the agency of Iglehart was, as he states, to make contracts for the transportation company, to transport freight from Cincinnati to Toledo, and to the Eastern cities, was one of special trust and confidence, and could not be discharged by a substitute. But, as Iglehart swore that he made the contracts for transportation, and adopted the signature of Shaw to the bills of lading, THE COURT permitted the bills to go to the jury, not as bills of lading, but as a part of the deposition of Iglehart, showing the contract for the transportation of the goods in question.

It was contended there was no contract showing that the defendants were common carriers beyond Toledo; and this being the case, the injury received by the goods must be proved to have been done on that route, to make the defendants liable. To this, THE COURT replied, the contract proved by Iglehart showed that it was for the transportation of the goods from Cincinnati to New York, and that that was a matter for the jury.

The goods were damaged when delivered at New York. Appraisers were called and wardens, as is the custom on such occasions, to ascertain the amount of the damage. The charges for this service, and the charge of the auctioneer, who sold the goods, it is contended, constitute a part of the damages which the plaintiffs may claim. This was opposed by the defendants' counsel, who insists that the defendants can not be held liable for these.

THE COURT instructed the jury that the damages were to be ascertained by the value of the goods at New York, in a sound state. This was proved to be 12½ cents per yard. The damaged goods were sold at auction at an average of about 10½ cents per yard. That the sale at auction not being objected to for unfairness, will be received by the jury as evidence of the damage done to the goods. That the difference in value between the sound and damaged goods, together with the expenses of the appraisers and wardens, will constitute the amount the plaintiffs are entitled to recover. That this will place the plaintiffs in the situation they would have been in, had the goods been safely delivered at New York; and that this is all they are entitled to. That the plaintiffs were not entitled to recover the auctioneer's charge, as this would have been paid by plaintiffs, or charged as commission for selling the goods, had they been delivered

[1] [Reported by Hon. John McLean, Circuit Justice.]

without injury. The charge of the auctioneer is the same as the charge for selling on commission.

It appears .that the persons who delivered the goods at New York required the sum of eighteen dollars to be paid as a condition of the delivery. This was an unjust and illegal charge, but it was imposed by the agents of the transportation company, and was paid before the possession of the goods could be had. The defendants are responsible for this sum. It was paid of necessity, by the plaintiffs' agents, and it is an item which should be included in the damages to be recovered in this action. ·

The defendants, gentlemen of the jury, act in the capacity of common carriers. They hold themselves out to the world as such; and they are liable for all injuries done to the property they engage to transport; and nothing but the act of God, or the enemies of the country, can excuse a non-delivery of the goods, or an injury done to them. This results from the responsible business assumed by the defendants. Property of great amount is confided to them for the purpose of transportation, and for the protection of that property the utmost vigilance is not only required by all the agents of the defendants, but to secure the utmost safety to the goods, they are responsible for loss, except in the cases above specified.

The jury found for the plaintiffs, in accordance with the instructions of the court, $971.41 judgment. ·

---

## Case No. 10,918.

PENDERGAST v. BANK OF STOCKTON.

[2 Sawy. 108; [1] 4 Am. Law T. Rep. U. S. Cts. 247; 6 Am. Law Rec. 574.]

Circuit Court, D. California. Nov. 4, 1871.

TRANSFER OF STOCK LIMITED BY BY-LAWS.

A corporation, organized under a statute which authorizes it to make by-laws for "the management of its property, the regulation of its affairs," and "the transfer of its stock," and, further provides, that the stock of the company "shall be transferable in such manner as shall be prescribed by the by-laws of the company," has power to make a by-law, providing that no transfer of stock shall be made upon the books of the corporation, until after the payment of all indebtedness to the corporation due from the person in whose name the stock stands on its books. .

[This was a bill in equity by C. C. Pendergast against the Bank of Stockton to compel the transfer of certain stock.]

SAWYER, Circuit Judge. The object of the bill in this case, is, in part, to compel the defendant, a banking corporation, to transfer to complainant on its books, one hundred

---

shares of its stock. The bill alleges, that one Howard was the owner of two certificates of stock of the Bank of Stockton, each stating that the said Howard is the owner of fifty shares of the capital stock of the said bank transferable only upon the books of said bank, personally, or by attorney, upon the surrender of the respective certificates; that said Howard delivered said two certificates of stock to said complainant, after having indorsed upon said respective certificates, an instrument in writing, whereby the said Howard sold, transferred and assigned, the said shares of stock in said respective certificates specified, to complainant, and duly authorized said complainant to make the necessary transfer of said shares of stock upon the books of said defendant; that said complainant afterward presented the said certificates of stock. together with the said assignment and authority to transfer indorsed thereon, at the same time offering to surrender the same to said defendant, and requested said defendant to transfer the said stock upon its books in pursuance of said authority; and that said defendant refused so to do.

After a general denial of the allegations of the bill, the defendant for a further answer alleges, that before and at the time of the said transfer of stock from said Howard to complainant, the said Howard was indebted to the defendant for money, before that time loaned to him, in the sum of five thousand dollars, which sum still remains due and unpaid; that before said assignment, the defendant had established and adopted among others, the following by-law, to-wit: "No transfer of stock shall be made upon the books of the bank, until after the payment of all calls and assessments, made or imposed thereon, and of all indebtedness due to the bank by the person in whose name the stock stands on the books of the bank, except with the consent, in writing, of the president;" that the president of said bank had never consented in any manner to the transfer of said stock; that said by-law had been adopted, and was in full force at the time of the issue of said stock and of all the stock issued by said bank; and that said stock was issued to, and held by, said Howard subject to the said provisions of said by-law, of all which said complainant had due notice.

The complainant excepts to the sufficiency of this special answer, the ground of the exception relied on being, that the said corporation had no power to make the said by-law, forbidding a transfer of stock until all indebtedness of the holder to the bank is paid, and this is the question to be now determined.

The defendant's counsel refer to the act of April 14, 1853: "To provide for the formation of corporations for certain purposes," as the act under which the Bank of Stockton is incorporated, St. 1853, p. 87. The fourth